UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CRIMINAL ACTION NO. 0:21-cr-00018-DLB-EBA-2

| | |
|---|---|
| UNITED STATES OF AMERICA, | PLAINTIFF, |
| V. | **RECOMMENDED DISPOSITION** |
| WILLIS C. COCHRAN, | DEFENDANT. |

*** *** *** ***

On April 16, 2020, Willis Cochran was arrested in Ohio on an outstanding warrant from Kentucky for his alleged participation in a bank robbery in Kentucky. [R. 27 at pg. 1–2]. While being transported to the Lawrence County jail in Ironton, Ohio, Cochran notified officers that he was feeling sick, and fell to the ground. [*Id* at pg. 2]. Once in jail in Ohio, officers found a bag of suspected methamphetamine on his person, refused to admit him, and alerted EMS personnel. [*Id*.]. Cochran was transported to King's Daughter's Medical Center ("KDMC") in Ashland, Ky, where he was treated and discharged into Boyd County police custody with a diagnosis of a closed head injury and substance abuse. [*Id*.]. Subsequently, he was booked into the Boyd County Detention Center ("BCDC"). [*Id*.].

On April 20, 2020, investigators interviewed Cochran at the BCDC, where he was advised of his *Miranda* rights and spoke with investigators regarding his charges in relation to the bank robbery. [*Id*.]. However, this interview was cut short after Cochran again indicated he was not feeling well. [*Id* at pg. 3]. Then, on April 22, 2020, investigators again met with Cochran. He was readvised of his *Miranda* rights and voluntarily agreed to speak with the investigators, implicating himself in the bank robbery. [*Id*.].

Now, Cochran moves to suppress, arguing that he was improperly transported to Kentucky subsequent his arrest in Ohio pursuant to the Uniform Criminal Extradition Act ("UCEA");

Page **1** of **6**

therefore, any evidence acquired by Boyd County police is subject to the fruit of the poisonous tree doctrine and should be excluded from evidence in this case. [*Id*. at pg. 4]. In contrast, the United States argues that Cochran is incorrect for two reasons: First, the United States contends that the UCEA does not confer constitutional rights onto fugitives. [R. 31 at pg. at pg. 3]. Thus, the exclusionary rule and, by extension, the fruit of the poisonous tree doctrine, are not applicable to the current case. Second, the United States argues that even if this Court finds that the UCEA applies, Cochran's voluntary statements are admissible. [*Id*. at pg. 5–7].

Having considered the motion, and being sufficiently advised, this Court will recommend that the motion to suppress should be denied.

### III. ANALYSIS

Cochran argues that after being transported from Ohio to Kentucky, he was interrogated by Kentucky law enforcement officers where he uttered incriminating statements, and that these statements should be suppressed under the exclusionary rule and the fruit of the poisonous tree doctrine. [R. 27 at pg. 4–5]. As a basis for this claim, Cochran argues that the State of Ohio extradited him to Kentucky without following the proper extradition authority. [*Id*.]. Specifically, Cochran alludes to Ohio Rev. Code Ann. § 2963.09 which sets forth the requirements for a fugitive to receive a hearing before a judge prior to extradition:

> No person arrested upon a warrant under section 2963.07 of the Revised Code shall be delivered to the agent whom the executive authority demanding him appointed to receive him unless such person is first taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel. If the prisoner or his counsel desires to test the legality of his arrest, the judge shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state.

Ohio Rev. Code Ann. § 2963.09. Cochran then cites *Cummings v. United States*, 708 F.2d 722 (6th Cir. 1982) (holding "[w]hile a prisoner may actually be transferred under the Interstate Agreement on Detainers Act, ("IAD") he still enjoys the procedural right to have a pretransfer hearing which is conferred to him under the Uniform Criminal Extradition Act if the Act is adopted by the transfer state.").[1] In sum, Cochran's argument is that procedural rights conferred upon him by the UCEA have been violated because he was not taken before an Ohio judge to be notified of his rights prior to his extradition.

In response, the United States contends that Sixth Circuit precedent mandates that the UCEA was designed to facilitate the administration of justice between the states and does not confer rights to a fugitive. [R. 31 at pg. 3].

The federal authority to extradite fugitives from one state to another is established in Article IV § 2 Clause 2 of the Constitution; however, the power to execute extradition is enacted by a federal statute, 18 U.S.C. § 3182. Nevertheless, the procedures for extradition are a matter of state law. Accordingly, a majority of states have adopted versions the Uniform Criminal Extradition Act to govern extradition procedures.[2] Therefore, to properly analyze Cochran's claims, an analysis of the interplay between the various sources of law for extradition, as well as Sixth Circuit precedent on the matter, is necessary.

---

[1] To the extent that Mr. Cochran is raising an IAD claim, the Supreme Court has recognized that a plaintiff may state a § 1983 claim for relief if he is transferred pursuant to the IAD in violation of any pre-existing rights he may have under state or federal law. *Cuyler v. Adams*, 449 U.S. 433, 449–50 (1981). Notably, the Supreme Court has not definitively ruled on the issue of whether the UCEA confers rights to fugitives. *Barton v Norrod*, 106 F.3d. 1289, 1293 (6th Cir. 1997). Accordingly, Sixth Circuit precedent is controlling. As discussed in detail below, *Barton*, stands for the proposition that the UCEA does not confer rights onto fugitives in the Sixth Circuit. Thus, Mr. Cochran's reliance on *Cuyler* is misplaced, as there are no "pre-existing rights" being violated by his extradition.

[2] Because the federal extradition act failed to address the specific procedures to be followed, the National Conference of Commissioners on Uniform State Laws approved in 1926 a draft of the Uniform Criminal Extradition Act. The UCEA was revised in 1936 and has been adopted by forty-eight states, including Ohio and Kentucky. The Ohio version of the UCEA is codified at Ohio Rev. Code Ann §§ 2963.01–2963.29 the Kentucky version is codified at Ky. Rev. Stat. Ann. §§ 440.010–440.340.

> The Extradition Clause of the United States Constitution provides that:
>
> A person charged in any State with Treason, Felony, or other crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

U.S. Const. art IV, § 2, cl. 2. Notably, this clause does not confer any right on a fugitive, rather, it confers rights and duties on the executive authorities of the states. As the Extradition Clause does not specifically establish a procedure by which interstate extradition takes place, 18 U.S.C. § 3182, was codified to execute a state's executive authority's power to extradite. In full, the text of the statute reads:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate [United States magistrate judge] of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate [United States magistrate judge] of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

18 U.S.C. § 3182. Like the Extradition Clause, § 3182, does not confer any rights onto a fugitive, but rather, confers rights and duties on the executive authorities of the states. Accordingly, Mr. Cochran's assertion that officers transported him into Kentucky "in violation of extradition rights clearly recognized under the United States Constitution. . ." is without merit as neither the Extradition clause nor § 3182 confer rights onto fugitives. [R. 27 at pg. 4]. Therefore, any argument that Mr. Cochran makes regarding his extradition rights must flow from the UCEA.

Cochran argues that, after his extradition from Ohio to Kentucky, he was interrogated by law enforcement officers where he gave incriminating statements, and that these statements should

be suppressed under the exclusionary rule and the fruit of the poisonous tree doctrine. [R. 27 at pg. 4–5]. Notably, Cochran makes no arguments regarding voluntariness of his statements or whether he was properly advised of his rights. Therefore, Cochran's argument for suppression is limited to the purported violations of his procedural rights under the UCEA.

The Sixth Circuit has addressed the question of whether the UCEA confers rights to fugitives under the UCEA. In *Barton v. Norrod*, 106 F.3d 1289 (6th Cir. 1997), a fugitive brought an action alleging violation of his constitutional rights by the police officers who transported him from Kentucky to Tennessee without following formal extradition procedures. *Barton*, 106 F.3d at 1291–93. Ultimately, the *Barton* court held that the constitutional and statutory extradition provisions were designed to facilitate the administration of justice between the states and were not designed to protect fugitives. *Id*. at 1295. Further, the *Barton* court explained that "no constitutional protection is lost [when a fugitive is extradited back to a demanding state] since the extradition proceedings cannot inquire into the guilt of innocence of the charged party." *Barton* at 1298. Accordingly, law enforcement's failure to comply with established extradition procedures did not deprive the fugitive of any protected right. *Id*.

Altogether, the Extradition Clause, 18 U.S.C. § 3182, and Sixth Circuit precedent make it clear that the rights and duties associated with extradition are vested in the states themselves and not a fugitive individually. Consequently, Cochran's constitutional rights were not violated when he was transported from Ohio into Kentucky for purposes of medical treatment. Importantly, when seeking the suppression of evidence obtained from an allegedly unconstitutional search or seizure, a criminal defendant has the burden to prove a violation of his constitutional rights. *See United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). Sixth Circuit precedent makes it clear that Cochran's rights were not violated during his extradition from Ohio to Kentucky; therefore, Cochran has not met the burden of proof to show a violation of his constitutional rights.

Accordingly, this Court recommends that Cochran's motion to suppress, [R. 27], be denied.

## IV. CONCLUSION

For the above reasons, it is **RECOMMENDED** that Mr. Cochran's Motion to Suppress, [R. 27], be **DENIED**.

*** *** *** *** ***

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-50 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed April 29, 2022



Signed By:
*Edward B. Atkins* EBA
**United States Magistrate Judge**